By the Court.
 

 The parties, as well as the court, seem to agree that the representations and warranty contained in the catalogue were that the horse could trot approximately a 2:15 gait. The sole issue in the case was whether Bed Harvester could, at the time of sale, trot at such a gait, and upon that issue there was conflicting testimony. At the trial, the contentions of counsel for opposing parties were substantially as follows: The plaintiffs relied upon the testimony of expert horsemen who testified that in order to ascertain the speed and gait of a horse, the usual and customary distance for timing it was a quarter, or an eighth, of a mile, but more usually an eighth. On the other hand, the defendant offered testimony of a witness, also an expert, who testified that the expression,
 
 “a
 
 horse can trot a 2:15 gait,” meant in racing parlance that the speed determining the gait could be ascertained either at a quarter or an eighth of a mile, or even at a shorter distance, if it were capable of timing.
 

 Whether the plaintiffs’ contention, under the testimony adduced, was right or otherwise we need not here decide, for the simple reason that manifestly the court adopted the view of the defendant’s counsel, and gave to the jury the special request asked by him, over the objection of counsel for
 
 *395
 
 plaintiffs. This special request asked, and which was given before argument, was as follows:
 

 “A 2:15 gait in a horse means a flight of speed for a reasonable distance shorter than a mile,-which, if continued for the full mile, would make the time for the mile two minutes and fifteen seconds. This shorter distance need not be any particular distance to evidence a 2:15 gait, but should be such a distance as can be readily timed. ’ ’
 

 It will be observed that under this request, although there was testimony tending to prove that the usual and customary distance for determining speed was at the half or quarter mile post, the court, in response to the contention of plaintiff in error, charged the jury that a distance shorter than a mile “need not be any particular distance to evidence a 2:15 gait.” The case then assumed an aspect where the weight of evidence was involved rather than the charge of the court, since the court gave the charge asked for by counsel for the plaintiff in error.
 

 The auction sale was made in December, 1922, under a representation that Bed Harvester “can trot a 2:15 gait, and do it right. ’ ’ Counsel for defendant below also asked for a special instruction that, if the jury found from the evidence “that some time prior to the date of December, 1922,” Bed Harvester had attained this speed for a portion of a mile, capable of being readily timed, etc., their verdict should be for the defendant.
 

 The catalogue statement was not a representation as to past performances, but a guaranty that the horse could trot the gait mentioned at the time of the sale, and, while testimony relating to its gait at some time prior to the sale would be relevant, it
 
 *396
 
 was not conclusive, in view of the evidence adduced by the plaintiffs, and therefore did not justify the direction of a verdict for the defendant. The request, therefore, was properly refused. The evidence upon the rate and trial testing of the speed was substantially as follows: A witness for defendant testified that he had the care and training of the horse prior to its sale, and that in November, 1922, it had been timed by him at various distances; that it had trotted a quarter of a mile in 36 seconds, or at a 2:24 gait; an eighth of a mile in 17 seconds, or at a 2:16 gait; and a sixteenth of a mile in eight and a quarter seconds, or at about a 2:12 gait. No other testimony was offered by defendant as to the horse’s timing. On the other hand, in the spring and'summer of 1923 and at later times, the plaintiffs had the horse timed at varying distances of a quarter and an eighth of a mile, and the testimony tends to disclose that the best speed he was able to develop in 1923 was a quarter of a mile in 37 seconds and an eighth of a mile in 18 seconds; and that in the following year’s timing the best speed he was able to develop was 36 seconds for the quarter and 18 seconds for the eighth, or at a rate of 2:24 per mile.
 

 The issue whether the horse had approximated the gait guaranteed by the owner in the sale catalogue was submitted to the jury, and, their verdict upon that issue having been sustained by the lower courts, the judgment will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Jones and Matthias, JJ., concur.